UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT LEE,                                         :

                     Plaintiff,       :       No. 12 Civ. 2558 (PAE) (DF)

      -against-                           :       **REPORT AND**
                                         **RECOMMENDATION**
P.O. SANTIAGO, et al.,                              :

                   Defendants.      :
----------------------------------------------------------------X

**TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:**

      In this case, referred to me for a report and recommendation on Plaintiff's attorneys' fees

application, plaintiff Robert Lee ("Plaintiff") sued defendants Police Officer Santiago, *et al.*

(collectively, "Defendants") under 42 U.S.C. § 1983, for alleged constitutional violations

relating to Plaintiff's April 2009 arrest. Although Plaintiff has accepted an offer of judgment

providing for reasonable attorneys' fees, the parties have been unable to agree on the appropriate

amount of those fees, and Plaintiff has now moved the Court (*see* Dkt. 31) for an award of

$68,332.75 in fees and costs. For the reasons that follow, I recommend that Plaintiff be awarded

attorneys' fees and costs in the lesser amount of $40,385.

**BACKGROUND**

      Plaintiff initiated this action in April of 2012, seeking $35 million in compensatory and

punitive damages, plus attorneys' fees, for the allegedly unlawful search and seizure of his

person, his subsequent arrest on drug charges, and his strip and body-cavity searches while in

custody. (*See generally*, Complaint, dated Mar. 21, 2012[1] ("Compl.") (Dkt. 1).) At the inception

of the action, Plaintiff was represented by D. Andrew Marshall, Esq. ("Marshall"). (*See* Compl,

---

[1] Although the Complaint is dated March 21, 2012, the Court's Docket reflects that it was
filed on April 3, 2012. (*See* Dkt. 1.)

at 22.)  Shortly after Defendants answered the Complaint, however, Gregory Paul Mouton, Jr.,

Esq. ("Mouton"), appeared as co-counsel on behalf of Plaintiff.  (*See* Dkt. 9.)  From that point

on, Mouton principally handled the representation.

The case proceeded into discovery.  Although the parties were referred to the

undersigned for settlement mediation in the fall of 2012 (*see* Dkt. 13), they were unable to reach

an agreement at that time.  Plaintiff, through Mouton, filed an Amended Complaint on

October 23, 2012 (*see* First Amended Complaint, dated Oct. 23, 2012 ("Am. Compl.")

(Dkt. 20)), which Defendants answered on November 13, 2012 (*see* Dkt. 21).  On November 19,

2012, Defendants sent Plaintiff an offer of judgment offering to settle the case for $7,501 "plus

reasonable attorneys' fees, expenses, and costs to the date of this offer."  (*See* Notice of

Acceptance of Offer of Judgment, dated Nov. 28, 2012 (Dkt. 25), Ex. 1 (Offer of Judgment,

dated Nov. 19, 2012 ("Offer of Judgment")).)  The next day, the Court (Engelmayer, J.) held a

telephonic case-management conference, in which it resolved a number of discovery disputes

between the parties.  (*See* Dkt. 22 (Order, dated Nov. 16, 2012 (scheduling conference)).)  The

Docket reflects that the parties had also called upon the Court to resolve discovery disputes on at

least two prior occasions.  (*See* Dkts. 14; 16-19.)  On November 28, 2012, Plaintiff accepted the

Offer of Judgment.  (*See* Dkt. 25.)

Plaintiff then sought certain discovery relating to his fee application, to which

Defendants objected; the Court denied, without prejudice, Plaintiff's request to compel that

discovery.  (*See* Dkt. 30.)  On January 22, 2013, Plaintiff timely filed, pursuant to a schedule set

by the Court (*see id.*), a motion for attorneys' fees and costs (Dkt. 31) and a five-page

memorandum of law (*see* Memorandum of Law, dated Jan. 22, 2013 ("Pl. Mem.") (Dkt. 32)).

The next day (one day after the Court's deadline (*see* Dkt. 30)), Plaintiff also filed two

declarations in support of his motion (*see* Declaration of Gre[g]ory Mouton, Esq., in support of Motion for Attorneys' Fees and Costs, dated Jan. 22, 2013 ("Mouton Decl.") (Dkt. 33); Declaration of D. Andrew Marshall, Esq., in Support of Motion for Attorneys' Fees, dated Jan. 21, 2013 ("Marshall Decl.") (Dkt. 34)).

Defendants opposed Plaintiff's motion by papers dated February 5, 2013. (*See* Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, dated Feb. 5, 2013 ("Def. Mem.") (Dkt. 35); Declaration of Andrew G. Owen, Esq., dated Feb. 5, 2013 (Dkt. 36).)

Plaintiff replied on February 12, 2013. (*See* Reply Memorandum of Law, dated Feb. 12, 2013 ("Pl. Reply Mem.") (Dkt. 39); Reply Declaration of Gregory Mouton, Esq., in Further Support of Motion for Attorneys' Fees and Costs, dated Feb. 12, 2013 ("Mouton Reply Decl.") (Dkt. 38); Declaration of D. Andrew Marshall, Esq., in Response to Defendants' Opposition to and in support of Plaintiff's Motion for Attorn[eys'] Fees and Costs, dated Feb. 12, 2013 ("Marshall Reply Decl.") (Dkt. 37).)

**DISCUSSION**

## I.    APPLICABLE LEGAL STANDARDS

Under Federal Rule of Civil Procedure 54(d), the Court "should" award costs to the "prevailing party" in a civil action. Fed. R. Civ. P 54(d)(1). Further, under 42 U.S.C. § 1988, the Court may, in its "discretion," award "a reasonable attorney's fee as part of the costs" to the prevailing party in a Section 1983 action. A civil rights plaintiff who obtains some relief, such as money damages, by accepting a Rule 68 offer of judgment is a "prevailing party" for fees purposes. *See Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 221 (S.D.N.Y. 2011) ("'[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the

merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant

from whom fees are sought, or comparable relief through a consent decree or settlement.'"

(quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992))).

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are

appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number

of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir.

2011) (lodestar calculation creates "presumptively reasonable fee" (citing *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v.*

*Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662, 1673 (2010) (internal quotation marks

omitted)).  There is a "strong presumption" that the lodestar represents the appropriate award,

though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 130

S. Ct. at 1673.

The party seeking fees "must provide the Court with sufficient information to determine

if the fee assessed is reasonable." *Cordero v. Collection Co.*, No. 10 CV 5960 (SJ) (VVP),

2012 WL 1118210, at *3 (E.D.N.Y. Apr. 3, 2012) (citing *New York Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).  To that end, the fee application must be

supported by contemporaneous time records that "specify, for each attorney, the date, the hours

expended, and the nature of the work done." *Carey,* 711 F.2d at 1148.

In determining whether an attorney's requested hourly rate is reasonable, the Court

should consider what "a reasonable, paying client would be willing to pay," *Arbor Hill*, 522

F.3d at 184 (2d Cir. 2008), which varies by practice area and location. *Id.*, at 192.[2]  Where an

---

[2] "Of course, the concept of a 'rate a paying client would be willing to pay' is a proxy,
effectively a legal fiction, with regard to most cases involving fee-shifting statutes, especially

attorney has billed time for performing "administrative tasks," such as copying or organizing

documents or filing documents with the court, *see Ryan v. Allied Interstate, Inc.*, Nos. 12 Civ.

0526 (AJP), 12 Civ. 1719 (AJP), 2012 WL 3217853, at *6 (S.D.N.Y. Aug. 9. 2012), or

drafting boilerplate procedural forms such as certificates of service, such time should not be

compensated at an attorney-level billing rate, *see Rosado v. City of New York*, No. 11 Civ. 4285

(SAS), 2012 WL 955510, at *5 (S.D.N.Y. Mar. 5, 2012) (compensating, at paralegal rates,

"administrative/paralegal" work performed by solo attorney).   Similarly, an attorney's travel

time should not be compensated at a full attorney rate. *See, e.g., Mister Sprout, Inc. v. Williams*

*Farms Produce Sales, Inc.*, No. 10 Civ. 6036 (RMB) (JCF), 2012 WL 3031471, at *7 (S.D.N.Y.

July 25, 2012) ("Although it is within a district court's discretion to compensate travel time at

the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by

50 percent." (internal citations omitted)).

  Where the requested amount of fees is excessive because the number of hours stated is

greater than should have been required for the work performed, the Court should reduce the

stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487

(2d Cir. 2002) (the time component should not reflect excessive hours).   Billing practices that

tend to inflate the number of hours recorded also warrant reductions.   In that regard, breaking out

small tasks that take minimal time into separate entries – not for the sake of clarity, but in order

to increase the total amount billed – is inappropriate. *See Ryan*, 2012 WL 3217853, at *7

(reduction warranted for attorney's practice of separately billing, at a standard billable

---

§ 1983 cases, where clients are virtually all without funds and could not pay anywhere near the
minimum amounts that lawyers must charge to make the bringing of such cases economically
viable." *Townes v. City of New York*, No. 12 Civ. 3201 (BMC), 2013 WL 153726, at *2
(E.D.N.Y. Jan 15, 2013).

increment, each short email received by attorney). A reduction is also appropriate where the attorneys' proffered time records are vague or otherwise inadequate to enable the Court to determine the reasonableness of the work performed or the time expended. *See Hensley*, v. *Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (holding overly-vague time records insufficient to substantiate claimed expenditure of time; collecting cases). Finally, in determining whether an excessive amount of time was expended on a matter, the Court may consider the nature and quality of the work submitted by counsel, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (affirming denial of fees for work that did not improve outcome for client); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436.

In circumstances where it is difficult for the Court to make line-item reductions to adjust for excessive billing, the Court may apply a percentage reduction as a "practical means of trimming fat" from a fee application. *See, e.g., Carey*, 711 F.2d at 1142, 1146 (allowing percentage reductions to correct for deficiencies in fee application, including "excessive claims for certain tasks" and "inadequate detail in documentation").

When a plaintiff accepts an offer of judgment that includes fees "up to the date" of the offer, the Court, as a general matter, should not award fees for work performed on the plaintiff's claims after that date. *See Long v. City of New York*, No. 09 Civ. 699, 2010 U.S. Dist. LEXIS 81020, at *5 (S.D.N.Y. Aug. 6, 2010). Courts, however, are somewhat divided on the question of whether this means that counsel should not be compensated for time spent preparing a subsequent fee application. *Compare id.*, at *5-6 (while not foreclosing the possibility that

certain circumstances might justify the award of such fees, nonetheless concluding that "plaintiff's counsel is not entitled to fees and expenses for work done in preparing and filing this motion" because "[t]he Rule 68 judgment limited recoverable fees and expenses to those incurred prior to the date of the offer"), *with Rosado*, 2012 WL 955510, at *5 (awarding, "as a matter of equity," what court considered a reasonable fee for preparing fee application, even though plaintiff was "[a]rguably. . . precluded from seeking fees incurred after . . . the date of the Rule 68 Offer of Judgment").

As for costs, it is again the requesting party's burden to support its application, and this means that the requested costs must be substantiated. *See CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513 (GBD) (AJP), 2012 WL 4714820, at *2 (S.D.N.Y. Oct. 3, 2012) (denying reimbursement for unsubstantiated costs). Court fees that are reflected on the Court's docket are sufficiently substantiated, *id.*, as are costs for which a plaintiffs provides extrinsic proof, such as invoices or receipts. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular costs may also be sufficient. *See Abel v. Town Sports Int'l LLC*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012). A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation.

## II.    **PLAINTIFF'S MOTION**

### A.    **Reasonable Hourly Rates**

Plaintiff requests that Marshall be compensated at the rate of $500 per hour, and that Mouton be compensated at the rate of $425 per hour. Plaintiff also seeks fees at the rate of $255 per hour for work performed by Donnika Hudson ("Hudson"), a paralegal employed by

Marshall. For the reasons that follow, I recommend that each of these proposed rates be reduced.

### 1.   Marshall

At one point in his supporting declaration, Marshall states that he received his J.D. from Northeastern University School of Law in 1995 (*see* Marshall Decl. ¶ 3), although, at another point, he states that he "graduat[ed] law school in 1993" (*see id.* ¶ 6). In any event, while Marshall, a solo practitioner (*id.* ¶ 2), characterizes his practice over the past approximately 18 to 20 years as that of an "active civil rights lawyer" (*see id.* ¶ 6), he apparently spent most of his career as a criminal defense attorney, and only recently, in 2007, incorporated civil rights litigation into his practice (*see id.* ¶ 7).

While this Court has accepted a range of hourly rates as reasonable for civil rights work, the rates that have been approved by the Court for such work by attorneys at small firms or in solo practice has tended to be lower than that sought by Marshall in this case, even where such attorneys have had substantial experience in their practice area. For example, in *Agyapong v. Bohan*, No. 11 Civ. 586 (VB), 2013 WL 1687737 (S.D.N.Y. Apr. 9, 2013), a Section 1983 case like this one, the Court rejected the $500-per-hour rate requested by a solo practitioner with more years of experience, and considerably more experience in civil rights work, than Marshall, *see id.*, at *2 (noting that counsel had been practicing law since 1980, and had litigated approximately 400 civil rights cases, representing about two-thirds of his practice). Instead, the Court awarded fees in that case at the rate of $400 per hour, finding such a reduced rate to be more in line with rates awarded in this District. *Id.*

Indeed, this District has rarely awarded rates as high as those requested by Marshall, to attorneys similarly situated, in this market. *See Wong v. Hunda Glass Corp.*, 2010 WL 3452417,

at *3 (S.D.N.Y. Sept. 1, 2010) (finding that "the range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 and $350 per hour"); *Reiter v. Metropolitan Transportation Authority*, No. 01 Civ. 2762, 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) ("The Court notes that a recent survey of case law found that within the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this district." (Internal quotation marks and citation omitted)).

Upon reviewing comparable cases, and in consideration of the length and particular nature of Marshall's experience, this Court concludes that Marshall's fees should be awarded at the rate of $350 per hour. *See Roberts v. City of New York*, No. 11 Civ. 5458 (JGK) (DF), 2012 WL 5431034, at *6 (S.D.N.Y. Oct. 16, 2012) (in § 1983 case, accepting requested rate of $350 per hour for attorney who had gained experience in the New York City Law Department and the State Attorney General's Office, and had since been in her own practice for 12 years), *report and recommendation adopted by* 2012 WL 5429521 (Nov. 7, 2012); *Rosado*, 2012 WL 955510, at *5 (in § 1983 excessive-force case, awarding requested rate of $350/hour to solo attorney who had at least 12 years of litigation experience, with at least three of those years in the area of civil rights); *McDow v. Rosado*, 657 F. Supp. 2d 463, 468 (S.D.N.Y. 2009) (in § 1983 false-arrest and excessive-force case, approving $350/hour rate for two "well-seasoned litigators with at least 10 years of experience," from small firm).[3]

---

[3] These recent awards are particularly noteworthy because, in each case, the Court awarded the attorney's requested rate, so the cases thus provide some evidence not just of what the Court determined was reasonable, but what the experienced attorneys themselves considered a reasonable rate.

9

Where, however, Marshall recorded time for tasks that would have more appropriately been performed by a paralegal – specifically 1.2 hours for the service and filing of papers (*see* Mouton Reply Decl., Ex. 17 (Third Amended Invoice ("Invoice") (entries for Apr. 3 and 4, 2012, and Oct. 9 and 11, 2012))[4] – his time should be compensated at a lower rate. For such work, I recommend that Marshall be awarded fees at the rate of $100 per hour, which is the same rate I recommend for the paralegal whom, at some point, Marshall employed to perform this same type of work. (*See* Discussion, *infra*, at Section II(A)(3).)

## 2.    Mouton

Mouton graduated from Hofstra University School of Law in 2008 (Mouton Decl. ¶ 5), and, upon his graduation, he was hired by the New York City Law Department (the "Law Department") (*id.* ¶ 11). After working in several divisions at the Law Department, including those that deal with constitutional torts (*see id.* ¶¶ 11-20), Mouton left that job in February of 2012, and, "[a]fter a short hiatus, [he] became a solo practitioner" (*id* ¶ 24). Thus, at the time that he performed the bulk of his work on this case, Mouton was in his fifth year of law practice, and his first year of solo practice.

Mouton goes to great lengths to portray himself as unusually skilled and experienced for someone with his level of seniority, detailing not only the large number of trials in which he was involved as a young lawyer, but even his internships while in law school. (*See* Mouton Decl. ¶¶ 6-23.) He also submits affidavits from several third parties supporting his requested hourly rate and attesting to his skills. (*See* Mouton Decl., Exs. 4-9.) Defendants counter by casting aspersions on Mouton's professionalism and on certain of his accomplishments, and casting the

---

[4] *But see* Discussion, *infra*, at 20-21 (finding it appropriate to reduce the number of hours expended on this non-legal work by .2 hours).

supporting declarations as in the self-interest of other practitioners who would benefit from an increase in the range of court-awarded fees in similar cases. (*See* Def. Mem., at 5-8.)

The Court notes that a review of Mouton's submissions in this case does not reveal extraordinary skill for a practitioner at his level. In fact, the Amended Complaint is repetitive and shows signs of careless cutting and pasting. (*See, e.g.*, Am. Compl. ¶ 33 (referring to plaintiff Robert Lee as "her.").) Further, Plaintiff's papers, especially his reply papers, cite very little case law. (*See* Pl. Reply Mem. (2-paragraph brief citing no cases and referring to Mouton's Reply Declaration for details); Mouton Reply Decl. ¶¶ 26-33 (citing no law in support of argument that billing descriptions were sufficiently particular and work described was compensable); ¶¶ 63-65 (citing no case law in support of argument against compensating attorney at lower rates for non-attorney-level work); ¶¶ 70-72 (citing no law for proposition that fees should be awarded through date when Offer of Judgment was received by mail).) Based on the record before this Court, I recommend that Mouton be awarded fees based on an hourly rate that reflects his actual level of experience and expertise – *i.e.*, based on a rate appropriate for a solo practitioner with approximately five years of relevant practice experience.

Not surprisingly, many of the cases in this District that address appropriate billing rates for attorneys with fewer than 10 years of experience are cases that involve work performed by associates in law firms. *See, e.g.*, *Wise v. Kelly*, 620 F. Supp. 2d 435, 443-47 (S.D.N.Y. 2008). Mouton's experience, in years, is roughly analogous to that of a mid-level associate. Nonetheless, this Court recognizes that Mouton did effectively serve as lead counsel in this case, and thus the Court finds it appropriate to look to decisions awarding fees to more senior associates. In view of such decisions, I recommend that Mouton's fees be awarded at the rate of $300 per hour. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2012 WL

11

3878144, at *4 (S.D.N.Y. Aug. 6, 2012) ("Senior Associates [at 34-person employment-law firm] with eight or more years of experience . . . are awarded $300 per hour, reduced from their requested rates of $370 to $400."); *Clover v. Shiva Realty of Mulberry, Inc.*, No. 10 Civ. 1702 (RPP), 2011 WL 1832581, at *5 (S.D.N.Y. May 13, 2011) (approving $300 per hour for senior associate at small firm who had been "practicing law for nearly nine years"); *see also Adorno v. Port Auth. of N.Y. and N.J.*, 685 F. Supp. 2d 507, 513-514 (S.D.N.Y. 2010) (reducing rate for sixth-year associate from $300 to $250 in "complex and difficult" case; noting that court "had the opportunity to observe him at trial in this case, and . . . while he is a capable lawyer, [the court does] not believe he falls into the category of 'senior associate'").

I also recommend, though, that Mouton be compensated at lower rates for travel and for non-attorney work. For travel, for which Mouton recorded 1.1 hours of time (*see* Invoice (entry for Aug. 27, 2012)), I recommend that he be awarded fees at the rate of $150 per hour, *i.e.*, half of his reasonable rate for legal work, see *Mister Sprout*, 2012 WL 3031471, at *7; *Agyapong*, 2013 WL 1687737, at *1 (awarding attorney $400 per hour for legal work and $200 per hour for travel). For non-attorney work (specifically, time spent serving papers), for which Mouton recorded 1.5 hours of time (*see* Invoice (entries for Aug. 22 and 27, 2012, Sept. 25 and 28, 2012, and Nov. 15, 2012)), I recommend that he, like Marshall, be awarded fees at the rate of $100 per hour.[5]

---

[5] In response to Defendants' contention that they should not be charged attorney rates for paralegal work, Mouton argues that, as a solo practitioner whose rate was set, in part, based on his "low overhead," he should not have been expected to employ a paralegal and should not have his rates reduced for non-attorney work. (*See* Mouton Reply Decl. ¶¶ 63-65.) In this regard, even aside from the fact that many small firms and solo practitioners (such as Marshall) do employ paralegals, the Court notes that the work of such support staff would itself be compensable in a proceeding such as this, and therefore should not be classified merely as "overhead."

### 3.    Hudson

The rate of $255 per hour that Plaintiff seeks for Hudson's work as a paralegal is also high, and I recommend that her requested rate be reduced to $100 per hour, which has typically been awarded by this Court for paralegal work. *See, e.g., Thai-Lao Lignite*, 2012 WL 5816878, at *7 (reducing requested rates for paralegals at large law firm from over $300/hour to $100/hour; collecting cases).

### B.    Reasonable Number of Hours

Plaintiff apparently seeks compensation for 22.7 hours of Marshall's time, 132.6 hours for Mouton's time, and 1.7 hours of Hudson's time. (*See generally* Invoice.[6]) As a threshold matter, the Court notes that Mouton declares that the Invoice he has submitted reflects contemporaneous time records (Mouton Decl. ¶ 44), and specifies, in table form, "for each attorney, the date, the hours expended, and the nature of the work done," *Carey,* 711 F.2d at 1148. The Invoice is thus sufficient to support an award of fees for those entries that the Court deems reasonable. In addition to challenging Mouton's and Marshall's billing rates, however, Defendants challenge counsel's recorded time entries on several grounds, discussed in detail below, and request that the Court "severely reduce" the number of hours requested by both attorneys. (Def. Mem., at 20.) For the reasons that follow, I recommend that the Court make a moderate reduction in counsel's stated hours.

---

[6] The Invoice states that the total for each attorney is 22.1 for Marshall and 133.1 hours for Mouton. By this Court's calculation, however, the total of the entries on the Invoice for Marshall is actually 22.2 hours. Further, the Invoice shows two entries of 0.5 hours each for "Inter-office discussion re initial conference" on August 26, 2012. Although both are attributed to Mouton, the Court assumes that, as with the other inter-office communications shown, Plaintiff intended to attribute one of these entries to Marshall, and calculates the total hours for each attorney accordingly.

13

### 1.   Work Performed Through November 19, 2012<br>(the Date of the Offer of Judgment)

Plaintiff accepted an offer of judgment that was explicitly directed to damages "plus reasonable attorneys' fees, expenses, and costs *to the date of this offer*." (Offer of Judgment (emphasis added).) The plain meaning of "the date of this offer" is the date stated on the offer – *i.e.*, November 19, 2012. *See Barile*, 2013 WL 795649, at *25-26. Moreover, it appears that Defendants delivered the offer to Plaintiff by both mail and email, with the latter having been actually received by Plaintiff's counsel on the date stated on the offer. (*See* Mouton Decl. ¶¶ 40-41; Invoice (entry for November 19, 2012, conceding that Offer of Judgment was received by email on that date).) Accordingly, apart from time spent preparing the fee application (discussed separately below), Plaintiff is not entitled to recover fees for work performed after November 19, and I recommend that counsel's time entries for November 20 and 21 (representing 1.1 hours for Marshall and 7.8 hours for Mouton) be excluded from any fee award.

For the time period from the commencement of the action through November 19, 2012, the Invoice reflects 16.1 hours of work performed by Marshall, 98.1 hours of work performed by Mouton, and 1.7 of work performed by Hudson. Defendants argue that a number of these entries are overly vague, that some are false or inflated, and that others reflect work that should not have been performed; these and related arguments are addressed here, in turn.

### a.   Allegedly Vague Time Entries

Defendants argue that several of Mouton's time entries are too vague to support an award of fees for the recorded time, pointing to entries for "client meetings" with no specified topic, and for "inter-office discussions" and "file review." (*See* Def. Mem., at 11-12.) Mouton counters that the subjects of his conversations with his client are privileged (*see* Mouton Reply

14

Decl. ¶ 28), that discussions between him and Marshall occurred at "critical points in the litigation" and were "entirely proper" (*see id*, ¶¶ 32-33), and that periodic "file review" is necessary for him to "stay[] on top of" his cases[,] but that the content of such review is privileged and work-product (*see id.*, ¶¶ 29-31).

Regarding client meetings, while Mouton is incorrect that the attorney-client privilege prevented him from providing even a general description of the topic of such meetings (*cf.* Local Civ. Rule 26.2 (providing that privilege logs should provide "the general subject matter" of privileged communications)), the absence of such descriptions is not fatal here. Even without having the benefit of more detailed descriptions, this Court is able to conclude that the amount of time spent by counsel on client meetings – 10.1 hours – was facially reasonable, over the four months of this litigation. More specifically, it appears entirely appropriate for Marshall to have met with Plaintiff for 2.6 hours in an initial intake interview (*see* Invoice (entry for Mar. 1, 2012)); for Mouton to have met with Plaintiff for an hour shortly after taking over as lead counsel in the case (*see id.* (entry for Aug. 1, 2012)); and for Mouton to have met with Plaintiff for a total of four hours to prepare him for his deposition (*see id.* (entries for Nov. 15 and 16, 2012)). It was also reasonable for Marshall to have met with Plaintiff to assist in the preparation of a Court-ordered client affidavit describing the police officers allegedly involved in the incident (*see id.* (entries for Oct. 9 and 11, 2012)), although, for separate reasons discussed below, relating to whether that affidavit was initially prepared properly, I do recommend that some of that meeting time be reduced (*see* Discussion, *infra*, at Section (II)(B)(1)(c)). Any lack of more specific descriptions of counsel's client meetings, however, does not, in itself, warrant any hours reduction.

15

The "inter-office discussions" between Mouton and Marshall occurred on July 31, 2012, shortly after Mouton appeared in the case; on August 26, 2012, in preparation for the initial conference in this case; and on October 25, 2012, in preparation for depositions. (*See* Invoice.) The conversations took 1.2 hours, .5 hours, and .6 hours, respectively -- lengths of time that appear reasonable, in context. While it is true that an attorney's claimed hours should be reduced where "necessary to correct for the inefficiencies resulting from [a] co-counsel arrangement" in which responsibilities are not divided efficiently, *Simmonds v. New York City Dept. of Corr.*, No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *7–8 (S.D.N.Y. Sept.16, 2008) (applying 40% deduction to adjust for such inefficiencies), the arrangement in this case does not appear to have resulted in duplicative work. If anything, it was more efficient to have the majority of the work handled by the more junior attorney, Mouton, as indeed occurred. I therefore do not recommend any reduction for consultations between the two attorneys in this case.

Regarding Mouton's review of his case files, however, while Mouton is correct that his professional responsibilities obligated him to stay "on top of" his cases, he has not shown why his frequent so-called "file reviews" in this case, curiously always recorded as taking exactly 1.0 hour (*see* Invoice (entries for Aug. 14 and 28, 2012, Sept. 11 and 25, 2012, Oct. 9, 2012, Oct. 23, 2012, and Nov. 6, 2012)), were warranted. Certainly, Mouton has not demonstrated the reasonableness of 7.0 hours of "file review" over four months of a highly active case, and his time records raise real questions as to the appropriateness of this supposed "review." For example, Mouton recorded 1.0 hour for "[f]ile review" on August 28, 2012, after having spent 9.4 hours, by his own account, on various aspects of this very case over the two preceding days. (*See* Mouton Reply Decl., Ex. 17.) Without further explanation, such "review," purportedly to

16

stay "on top of" the case, cannot be considered justified, and I therefore recommend that counsel's "file review" entries, totaling 8.0 hours, be excluded from the fee award.

### b.   Allegedly False or Inflated Time Entries

Defendants challenge two aspects of Mouton's billing as "false," arguing that other evidence contradicts Mouton's claims that he performed certain stated tasks.  In particular, Defendants note that Plaintiff testified to meeting with his attorneys only three times, not the five times recorded on the Invoice, and that several of the entries Mouton recorded for reviewing "ECF bounce[s]" occurred on dates when no ECF email was sent in this case.  (*See* Def. Mem., at 12.)

Although Mouton concedes that Plaintiff testified to only three meetings with counsel, Mouton declares, under penalty of perjury, that the meetings recorded in his time records did, in fact, occur.  (*See* Mouton Reply Decl., at 35.)  Given Mouton's declaration, the Court cannot conclude that his billing statement, in this regard, is false.  It is equally possible that Plaintiff, in his testimony, excluded his initial intake interview with Marshall, counted the two meetings in October, 2012 (regarding his declaration) as a single meeting, or, without the benefit of records in front of him, simply forgot the number of meetings he had attended.  Similarly, this Court is not prepared to find any falsity with respect to Mouton's statements concerning his review of ECF emails, given Mouton's statement, in his declaration, that he may have reviewed such emails a day or two after they arrived, but that he never billed for nonexistent emails.  (*See* Mouton Reply Decl. ¶ 36.)

As for allegedly inflated time entries, Defendants point out that, on many days, Mouton chose not to aggregate minor tasks "in an apparent effort to 'pad' the [I]nvoice."  (Def. Mem., at 17.)  In this regard, it is true that Mouton has apparently adopted the practice of recording

separate .1-hour entries to bill multiple short tasks performed on a single day. For example, on October 22, 2012, Mouton recorded six, separate .1-hour entries for receiving two email messages from my Courtroom Deputy regarding scheduling a conference (one email having consisted of three lines of text, and the other, one line), for exchanging emails with opposing counsel regarding scheduling, and for receiving a voicemail from opposing counsel. (*See* Invoice.) In other words, brief electronic communications that may have taken a total of 5 to 10 minutes (if that), were recorded on the bill as having taken 36 minutes because each brief sending or receiving of a message was attributed an entire 6 minutes.

While Mouton is correct that "block-billing" is disfavored, and that billing in .1-hour increments is sufficiently particular, *see Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05 Civ. 6757 (LTS) (MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (noting that billing in tenth-of-an-hour increments is common), it does not follow that every task that counsel performs, no matter how brief, must or should have its own .1-hour entry. Instead, it is often proper to have a single brief entry for correspondence that may encompass sending and receiving several brief emails or phone messages. *See Barile*, 2013 WL 795649, at *13. Similarly, an attorney should not routinely bill 6 minutes for every ECF email notification, as the review of such notifications may take only seconds. *See id.*, at *7.

While it is difficult for the Court to assess the extent to which Mouton's .1-hour time entries inflated his bill, the Court notes that his separately recorded entries for what appear to be short emails or voicemails total at least 4.0 hours (*see* Invoice (entries for Aug. 22, 2012, Sept.6, 20 and 28, 2012, Oct. 22 and 25, 2012, and Nov. 7, 8, 13, 14, and 15, 2012)), and, in this Court's view, a reduction of 2.0 hours of this recorded time would be appropriate.

18

### c.   Allegedly Unjustified Work

Defendants also argue that Mouton failed to exercise reasonable billing judgment by including, on the Invoice, work that was fruitless or unjustified.  (*See* Def. Mem., at 13-15.) Specifically, Defendants assert that Plaintiff should not be entitled to recover for allegedly duplicative work necessitated when Mouton took over for Marshall (*id*, at 13); for work performed by Mouton to comply with this District's "Plan" for certain Section 1983 cases, when this case does not fall under the Plan (*id.*); for work on a contemplated sanctions motion that would have been "frivolous[]" and premature, and for other "inappropriate and unnecessary motion practice" (*id.*, at 14); for time required for Marshall to conform an affidavit to a court order, after Plaintiff initially served a non-complying affidavit (*id.*); and for time spent on a reply letter to the Court, despite the Court's individual rules stating that "reply letters are not invited" (*id.*, at 15).  Each assertion is addressed below.

First, while Plaintiff may not have needed two attorneys to prosecute this case, he was entitled to bring Mouton in as co-counsel, and a review of the Invoice does not suggest that the attorneys engaged in overly duplicative work.  Thus, I do not recommend a reduction in Plaintiff's fees on this basis.

Second, work performed by Plaintiff's counsel under the Plan should not be deducted from a fee award, as Defendants, by their own admission, also initially believed this case was covered by the Plan (*see* Def. Mem., at 13), and even demanded documents from Plaintiff pursuant to the Plan (*see* Mouton Reply Decl., Ex. 13).

Third, while Defendants' argument that they should not have to compensate Mouton for time spent preparing unnecessary motions is somewhat more persuasive, the Court again finds that no deductions are warranted.  As to Plaintiff's contemplated sanctions motion, it appears

19

from Mouton's Invoice that all he actually did was send Defendants' counsel a so-called "safe harbor" letter. (*See* Invoice (entries for Aug. 15, 2012).) Further, the Court never actually reached the question of whether Defendant's Answer was sanctionably deficient, as Mouton was apparently prepared to argue, ruling only that Plaintiff's contemplated sanctions motion would have been premature. (*See* Order, dated Oct. 2, 2012 (Dkt. 14).) As to the discovery motion that Defendants' challenge, while Mouton may not have engaged in full, good-faith conference with opposing counsel before seeking to compel certain discovery (*see* Def. Mem., at 14 & n.8), the application about which Defendants complain addressed a number of topics (*see* Invoice (entry for Sept. 25, 2012); *see also* Dkt. 14), and, in part, the Court *granted* the relief Plaintiff sought (*see* Dkt. 14). In addition, even if Mouton was overly contentious, it appears from the record that Defendants' counsel may have been equally so, as the Court, in its discovery Order, admonished both counsel "to work together collegially." (Dkt. 14.)

As Plaintiff does not refute Defendants' fourth argument – that Marshall engaged in unnecessary work by preparing and delivering an affidavit that did not conform to a court order, requiring him to prepare and deliver a revised affidavit (Def. Mem., at 14) – the Court accepts that argument, in substance. The Invoice reflects that, on October 9, 2012, Marshall met with Plaintiff, drafted an affidavit for him, and then delivered that affidavit to Defendants, for a total of 1.8 hours. (Invoice (entries for Oct. 9, 2012).) The Invoice then reflects that, on October 11, 2012, Marshall again met with Plaintiff, again drafted an affidavit for him, and again delivered an affidavit to Defendants, for a total of another 2.0 hours. (*Id.* (entries for Oct. 11, 2012).)

20

Accepting that the affidavit should have been prepared properly the first time, I recommend deducting half of Marshall's time that Marshall recorded over these two days, *i.e.*, 1.9 hours.[7]

## 2.    Work Performed on the Fee Application

Although, by necessity, Plaintiff's counsel's work on the fee application occurred after the date of the Offer of Judgment, and Plaintiff is therefore "[a]rguably" precluded from recovering for it, the Court concludes that it retains discretion to award reasonable compensation for this work. *See Rosado*, 2012 WL 955510, at *5. Indeed, Defendants nearly concede as much in their opposition, by requesting that such fees either be denied or, in the alternative, reduced. (*See* Def. Mem., at 18-20.) The Invoice reflects 5.5 hours of work by Marshall on the fee application and 26.7 hours of work for Mouton. Although I recommend that these totals be reduced, I do recommend that the Court compensate counsel for some amount of work in preparing the fee application. *See Rosado*, 2012 WL 955510, at *5 ("Nonetheless, as a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application. By not settling the attorneys' fees issue, the City was put on notice that time spent by counsel in seeking fees would become a component of 'reasonable attorney's fees.'").

The time recorded by Marshall with respect to the fee application was for the preparation of two short declarations describing his experience in civil rights work, so as to justify his requested billing rate (one declaration having been filed in initial support of the application, and one in reply) (*see* Invoice (entries for Jan. 22 and Feb. 12, 2013); *see also* Marshall Decl.; Marshall Reply Decl.), and an additional 1.3 hours for "[a]ttempt[ing] to obtain supporting

---

[7] This 1.9 hours includes 1.7 hours of legal work and .2 hours of non-attorney work, as reflected in this Court's lodestar calculation, *infra*.

declarations for [the] fee application" (Invoice (entry for Jan. 22, 2013)).  As it does not appear

that Marshall ever submitted any additional declarations in support of his requested fees, I

recommend that this 1.3-hour entry be excluded.  This would leave a total of 4.2 hours for

preparation of the two declarations that Marshall did submit to the Court.  While, considering the

length and contents of these declarations, roughly two hours of preparation time per declaration

seems a bit excessive, this amount of time is not so great as to warrant a reduction.  I therefore

recommend that Marshall be compensated for 4.2 hours for the time he spent working on the fee

application.

   Mouton's time entries on the fee application generally appear reasonable and sufficiently

particular to support an award, except for his time entries for "legal research" on unspecified

topics.  (*See* Invoice (entries for Jan. 12 and 13, 2013, and Feb. 9, 2013).)  Those entries are too

vague to support a full recovery.  *See, e.g.*, *Vishipco Line v. Charles Schwab & Co.*, Nos. 02 Civ.

7823, 7846, 7877, 7915, 7928, 7929 (SHS), 2003 WL 1936142, at * 2 (S.D.N.Y. Apr. 23, 2003)

(time entries such as "legal research" too vague to allow court to determine reasonableness of

time expended); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001)

(time entries such as "legal research," which do not indicate the subject matter of the work

performed, "do not permit a thorough evaluation").  I recommend that those particular entries,

totaling 9.2 hours, be reduced by 2.0 hours (slightly more than 20 percent), as "practical means

of trimming fat" from an insufficiently particular billing record.  *See Carey*, 711 F.2d at 1142;

*see also, e.g.*, *Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) (affirming 20-percent fee

reduction for vagueness and other deficiencies in attorney billing records); *Terminate Control

Corp. v. Nu-Life Constr. Corp.*, 28 F.3d 1335, 1342-43 (2d Cir. 1994) (30 percent fee reduction

for "lack of specific record keeping" was within the district court's discretion).

## C.   The Lodestar

Applying the above analysis, the lodestar in this case is $40,035, calculated as follows:

### Work Performed Through Date of Offer of Judgment

| | | | | | |
|---|---|---|---|---|---|
| Marshall: | $350/hour<br>(for legal work) | x | 13.2 hours[8] | = | $ 4,620 |
| | $100/hour<br>(for non-legal work) | x | 1.0 hour[9] | = | 100 |
| Mouton: | $300/hour<br>(for legal work) | x | 86.5 hours[10] | = | 25,950 |
| | $150/hour<br>(for travel) | x | 1.1 hours | = | 165 |
| | $100/hour<br>(for non-legal work) | x | 1.5 hours | = | 150 |
| Hudson: | $100/hour | x | 1.7 hours | = | 170 |

### Work Performed on the Fee Application

| | | | | | |
|---|---|---|---|---|---|
| Marshall: | $350/hour | x | 4.2 hours[11] | = | 1,470 |
| Mouton: | $300/hour | x | 24.7 hours[12] | = | 7,410 |

**Total: $40,035**

---

[8] This 13.2 hours represents 16.1 hours, less 1.2 hours for non-attorney work, less another 1.7 hours for the client affidavit that needed to be redone. (*See supra*, at 11, 20-21.)

[9] This 1.0 hour represents 1.2 hours, less .2 hours for service of the improperly prepared affidavit. (*See supra*, at 10, 21.)

[10] This 86.5 hours represents 98.1 hours, less 1.1 hours for travel time and 1.5 hours for non-attorney work, less another 7.0 hours for "file review" and 2.0 hours for excess time recorded by multiple .1-hour entries. (*See supra*, at 12, 16-18.)

[11] This 4.2 hours represents 5.5 hours, less 1.3 hours for time spent attempting to obtain non-party declarations in support of the fee application. (*See supra*, at 21-22.)

[12] This 24.7 hours represents 26.7 hours, less 2.0 hours for overly vague time entries. (*See supra*, at 22.)

23

## D.  **Degree of Success**

Defendants argue that the number of compensable hours expended by Plaintiff's counsel "must be substantially reduced" (Def. Mem., at 10) because of the limited degree of success that Plaintiff achieved (*see id.*, at 9-10). Specifically, Defendants point to the relatively low value of the offer of judgment accepted by Plaintiff – $7,501 – as compared to the amount of damages that Plaintiff demanded in his pleadings – compensatory and punitive damages totaling $35 million. (*Id.*, at 10.[13])

While the Court must be "mindful of the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff," *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir.2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)), the Court "retains substantial discretion to take into account the specific procedural history and facts of each case," *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004). Further, "'[t]here is no precise rule or formula' for adjusting the lodestar to account for limited success." *Id.* (quoting *Hensley*, 461 U.S. at 436-37 (1983)).

Ultimately, Plaintiff's case was a straightforward one, with his Complaint alleging an illegal stop, search, arrest, and two subsequent illegal strip searches, and not alleging excessive force or any physical injuries. (*See generally*, Compl.; Am. Compl.) While it is true that Plaintiff's ultimate recovery was modest relative to the astronomical sums he sought in his Complaint, that reflects more on the lack of realism in the original demands than on any lack of

---

[13] Defendants also include, in their opposition memorandum, a reference to the amount that Plaintiff demanded in the context of a settlement conference before this Court. The Court considers it inappropriate to disclose the substance of the parties' settlement negotiations, and will not consider those negotiations here.

success in the ultimate outcome.  As noted above, the lodestar calculation yields a "presumptively reasonable" fee, *Millea*, 658 F.3d at 166, and, in all of the circumstances presented here, I do not recommend any additional reduction in Plaintiff's fees for limited success.

### E.    Costs

Plaintiff also requests $460.25 in costs.  (*See* Invoice, at 1-2.)  The list of itemized costs that Plaintiff provides, however, adds up to $456.75, to which Plaintiff apparently intends to add non-itemized "ECF charges: $7.50."  (*Id.*)  The source of Plaintiff's own total of costs is, therefore, unclear.  Further, Plaintiff provides no documentation for any of the costs listed, including $10 for "Clerk of Court Charge for Certificate of Disposition," $80 for service of process, and various small charges for postage, copying, and ECF.[14]  The only documented cost is the $350 filing fee, which is reflected on the Court's own docket.  Given this lack of documentation and the apparent confusion in Plaintiff's own tally of costs, I recommend that the Court award $350 in costs unless Plaintiff provides additional evidence, in the form of receipts (or, if receipts are not available, a sworn affidavit or declaration under penalty of perjury) substantiating, with particularity, the other costs listed.

---

[14] Although Mouton declares that he has attached "documentation concerning the major underlying expenditures" to his declaration (Mouton Decl. ¶ 52), no such documentation is attached.

25

## CONCLUSION

For all of the reasons set forth above, I recommend that, as the prevailing party in this Section 1983 action, Plaintiff be awarded:

    (1)    $40,035 in attorneys' fees, and

    (2)    $350 in costs (unless counsel provides substantiation for additional amounts claimed to have been expended).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, United States District Judge, United States Courthouse, 500 Pearl Street, Room 2201, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Engelmayer. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       August 15, 2013

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies To:

The Honorable Paul A. Engelmayer, U.S.D.J.

All parties (via ECF)

27